[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 3902
This is a tax appeal from the Board of Assessment Appeals of the town of Vernon. The issue is the valuation of property owned by the plaintiff at 25 School Street in the town of Vernon beginning on the grand list of October 1, 1997.
The assessor valued the property as having a fair market value of $990,660, with an assessed value at 70% of fair market value of $693,420. The plaintiff appealed to the Board of Assessment Appeal which affirmed the assessor's valuation and assessment.
The date of valuation, as the property existed on October 1, 1997, is October 1, 1991.
The property consists of an .852 ± acre lot with a brick school house built in 1890. In 1996, the schoolhouse was converted into a juvenile court facility of or approximately 9072 square feet (based on the lease). It is located in a Planned Neighborhood Development Zone (PND) and considered an historic zone.
In 1996 Hamid spent approximately $680,390 to renovate the old schoolhouse into a juvenile court facility.
On December 7, 1995, Hamid and the State of Connecticut entered into a lease, with the salient terms as follows:
The lease is for a term of five years at an annual rental of $128,409.60.
The lessee may extend the lease for an additional five years at an annual rental of $113,810.40.
The lessee will pay the charges for electricity, gas, janitorial service, sewer charges and water charges.
The lessor will maintain the premises in good condition including painting and replacement of carpeting.
The lessee has the option to purchase the property at any time during the five year extension term at fair market value. CT Page 3903
The Court agrees that the income capitalization approach is the best method to determine the fair market value of the property.
Peter R. Marsele, the expert appraiser utilized by the defendant determined that the reasonable rental income for the property is the actual rental income during the first five years of the lease — $128,410. The Court does not accept this as accurate.
While the actual rental might be evidence of, or have relevance to, fair market rental, that is not the case in this instance.
The lease itself (Article 5) indicates that the terms of the lease are based on the cost of renovating the building into a courthouse. Over the five year period of the lease, the plaintiff will not have fully recouped the cost of renovations ($680,000) with the lease income of $642,000.
During the five year option period, assuming the option is exercised, the rental drops to $113,810.
In comparing the actual rental between the five year terms, in the first five years the rent is fixed at $14.15 per square foot, while it drops to $12.55 per square foot (using the per lease square footage).
The rental during the five year option period comes closer to a fair market rental than the first term, which is artificially higher so as to recover the costs of renovation.
The plaintiffs appraiser, Robert Stewart, also provided comparable commercial rents paid or asked for on or about October 1, 1991. His comparable rental properties ranged from $8.00 per square foot to as much as $17.74 per square foot, with adjustments made for location, expenses paid by the landlord, vacancy allowance, and overall quality along with other miscellaneous characteristics. But even the professional building with signed leases ranging from $9.36 to $17.74 per square foot was being advertised for $9.95 per square foot rental (these were gross leases).
Recognizing that property valuation is not an exact science, it is noted that the 1991 comparable rentals of a medical office building, a funeral home, and two professional office buildings are difficult to reconcile with the property in question. But CT Page 3904 utilizing the contract price for the option period of the lease ($113,810) and the per lease square footage, the current fair market rental value is $12.55 per square foot. Of course, that must be retrospectively adjusted to reflect the fair market rental value on October 1, 1991, and adjusted for the various characteristics previously mentioned.
Further analyzing the Income Capitalization Approach, the Court considers reasonable annual expenses as follows:
Management fees (3% of EFI) $ 3414.
Insurance 1800.
Elevator Service 1500.
Major Repairs 3000.
Total Expenses $ 9714.
Net Income $104096.
(The Court does not accept the claimed 10% vacancy and collection loss expense. The plaintiff is assured of payment and it is unwarranted speculation to advance the possibility the lease option will not be renewed).
The Court accepts the Capitalization rate as developed by Stewart of 12.14%. The capitalized value of the property is then ($104,096 — 12.14%) $857,463. However, this is the current fair market value which must be retrospectively adjusted to October 1991.
The Court, however, is convinced some downward adjustment should be made to appropriately reflect 1991 fair market value. On reviewing the comparable rentals provided by Stewart, it appears that the tenant would probably not have paid 12.55 per square foot in 1991 for this space giving consideration to location, lease terms and nature of the premises. Professional rental space in 1991 appears to have been, on average, somewhat lower.
For these reasons the Court will reduce the present market value of the property by five per cent to more accurately reflect what it believes to be retrospectively reasonable. CT Page 3905
Accordingly, judgment may enter finding that said property was over-valued. The appeal is sustained and the assessor is ordered to adjust the assessed value to reflect a retrospective fair market value of $815,000, arrived at as follows: $857,463 reduced by 5% = $815,000 (Rounded). The assessed value, therefore of 70% $573,500.
This change is on the grand lists beginning October 1, 1997.
Costs are not awarded.
Klaczak, J.